IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JIMMY L. HOUSTON,**                          Case No. 3:16 CV 3043

    Petitioner,                          Judge Sara Lioi

    v.                          Magistrate Judge James R. Knepp, II

**JOHN COLEMAN, Warden,**

    Respondent.                          REPORT AND RECOMMENDATION

## INTRODUCTION

Petitioner Jimmy L. Houston ("Petitioner") filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254, and an accompanying memorandum with exhibits. (Doc. 1; Docs. 1-1 to 1-11). Respondent is John Coleman, Warden of the Toledo Correctional Institution. Pending before the Court is Respondent's Motion to Dismiss the petition based on statute of limitations grounds, to which Respondent attached the state court record. (Docs. 7 & 7-1). Petitioner opposed the motion (Doc. 8), and Respondent replied (Doc. 9). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2. (Non-document entry dated December 27, 2016). Following review, the undersigned recommends the Motion to Dismiss be granted.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524,

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Id.* In this case, the Ohio Court of Appeals for the Sixth Appellate District, Sandusky County, set forth the following findings of fact:

> **{¶ 3}** The following undisputed facts are relevant to this appeal. Appellant, Jimmy Houston, recruited several accomplices and co-defendants, Ronald Ruby and Paul Bidwell, to break into the Sandusky County residence of James and Mary Kohler. On July 2, 2009, Ruby and Bidwell entered the home in accordance with the scheme. The Kohlers were physically beaten and threatened. The Kohlers were subsequently restrained and tied up while in excess of 30 firearms were stolen from the residence. The Kohlers, an elderly couple, were targeted based upon appellant's understanding that a cache of firearms and cash were kept inside the home.

Ex. 23, Doc. 7-1, at 196-202; *State v. Houston*, 2014 WL 1343683, at *1 (Ohio Ct. App.).[1]

## PROCEDURAL BACKGROUND

*Indictment & Guilty Plea*

In July 2009, a Sandusky County Grand Jury issued an indictment charging Petitioner with two counts of attempted murder in violation of Ohio Revised Code § 2903.02(A) and § 2923.02 (Counts 1 & 2), two counts of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1) (Counts 3 & 4), two counts of kidnapping in violation of Ohio Revised Code § 2905.01(A)(2) (Counts 5 & 6), two counts of aggravated robbery in violation of Ohio Revised Code § 2911.01(A)(3) (Counts 7 & 8), one count of aggravated burglary in violation of Ohio Revised Code § 2911.11(A)(1), with an attached firearm specification (Count 9), thirty-three counts of

---

1. Similarly, an earlier decision of the appellate court found the following facts:

> These charges stemmed from a home invasion where the victims were beaten and restrained, and numerous firearms were taken. Appellant planned the invasion, and recruited two other defendants, Paul Biddwell and Ronald Ruby, to help carry out the plan. Biddwell and Ruby were implicated as the individuals who entered the home and beat and restrained the victims.

*State v. Houston*, 2011 WL 4344306, at *1.

grand theft of a firearm in violation of Ohio Revised Code § 2913.02(A)(1) & (B)(4) (Counts 10-42), and one count of tampering with evidence in violation of Ohio Revised Code § 2921.12(A)(1) (Count 43). (Ex. 1, Doc. 7-1, at 4-18). Petitioner entered a plea of not guilty at his arraignment. (Ex. 2, Doc. 7-1, at 19).

At a plea hearing on April 26, 2010, Petitioner withdrew his prior not guilty plea, and entered a guilty plea to Counts 1 and 2 (attempted murder), Count 5 (kidnapping), Count 9 (aggravated burglary with a firearm specification), and Count 10 (grand theft). (Ex. 3, Doc. 7-1, at 20-23). As part of the plea, Petitioner agreed to testify against his co-defendants if necessary, the state agreed to dismiss the remaining counts in the indictment at sentencing, and the state agreed to dismiss the charges in case 09-CR-1123 at sentencing. *Id.* at 22. The trial court advised Petitioner of his rights, *id.* at 20-22, and accepted his plea, finding that he had made a knowing, voluntary, and intelligent waiver of those rights, *id.* at 23. *See also* Doc. 1-4 (plea hearing transcript).

At sentencing on May 11, 2010, the trial court imposed: 1) consecutive prison terms of 10 years on Counts 1 and 2; 2) concurrent prison terms of 10 years on Count 5 and five years on Count 9, plus a one-year mandatory sentence for the firearm specification to be served consecutively to Counts 1 and 2; and 3) a two year prison term on Count 10, for an aggregate sentence of 23 years in prison. (Ex. 4-5, Doc. 7-1, at 24-26)[2]; *see also* Doc. 1-5 (sentencing transcript).

---

2. On May 18, 2010, the trial court issued a *Nunc Pro Tunc* order to correct a clerical error that omitted language that the two-year sentence Count 10 was to be served consecutively to the sentences on Counts 1 and 2. (Ex. 5, Doc. 7-1, at 26).

*Direct Appeal*

On June 10, 2010, Petitioner, though counsel, filed a timely notice of appeal in the Sixth

District Court of Appeals, Sandusky County, Ohio. (Ex. 6, Doc. 7-1, at 27-28). In his brief, through

new counsel, Petitioner raised three assignments of error:

1. Appellant's sentence was contrary to law and constituted an abuse of discretion.

2. In contravention of recent U.S. Supreme Court precedent, *Oregon v. Ice*, the 6th Amendment to the U.S. Constitution, and the Re-enacted Ohio Sentencing Code, the trial court erred by imposing consecutive sentences without making the required statutory findings pursuant to R.C. §§ 2929.14(E)(4), 2929.41(A).

3. Trial counsel rendered ineffective assistance of counsel in violation of the 6th Amendment to the U.S. Constitution and Article I, Sections 10, 16 of the Ohio Constitution.

(Ex. 7, Doc. 7-1, at 34-57). The state opposed, and Petitioner filed a reply. (Exs. 8-9, Doc. 7-1, at

66-83). On September 16, 2011, the appellate court rejected Petitioner's claims and affirmed the

judgment of the trial court. (Ex. 10, Doc. 7-1, at 84-95); *State v. Houston*, 2011 WL 4344306 (Ohio

Ct. App.).

On October 26, 2011, Petitioner, *pro se*, filed a timely notice of appeal to the Supreme

Court of Ohio. (Ex. 11, Doc. 7-1, at 96-97). In his memorandum in support of jurisdiction,

Petitioner raised two propositions of law:

1. The Eighth Amendment prohibits imposition of the maximum penalty on one who plans or aids a felony in the course of which an attempted murder and felonious assault is committed by cofelons [sic] but who does not himself solicit, request, command, cause, or aid the attempted [sic] to murder and feloniously assault, or intent that an attempt to murder and feloniously assault with be employed.

2. The simultaneous repeal and revival of R.C. 2929.14(E)(4) and 2929.41(A) invalidated by State v. Foster, 109 Ohio St. 3d 1, Foster is prospectively

> overruled by the holding in *Oregon v. Ice* (2009), 555 U.S. 160, and applies to those who either raised *Ice* at sentencing, on direct appeal, or pending appeal.

(Ex. 12, Doc. 7-1, at 98-122). On February 1, 2012, the Ohio Supreme Court declined jurisdiction to hear the case. (Ex. 13, Doc. 7-1, at 123).

*Application for Reopening & Petitioner's Subsequent Resentencing*

On December 15, 2011, Petitioner, through new counsel, filed an application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (Ex. 14, Doc. 7-1, at 124-29). He argued his appellate counsel was ineffective for failing to raise as error the trial court's failure to merge the sentences for aggravated burglary and grand theft. *Id.* On February 8, 2012, the appellate court granted Petitioner's application for reopening. (Ex. 15, Doc. 7-1, at 130-34). Petitioner, through counsel, filed a brief raising a single assignment of error:

1. The trial court erred when it failed to merge [Petitioner's] convictions for aggravated burglary and grand theft at sentencing.

(Ex. 16, Doc. 7-1, at 135-48). On February 1, 2013, the appellate court reversed the trial court's judgment in part, vacated the sentences imposed for aggravated burglary and grand theft, and remanded to the trial court for a new sentencing hearing on those counts. (Ex. 17, Doc. 7-1, at 149-54).

On April 18, 2013, the trial court held a resentencing hearing. (Ex. 19, Doc. 7-1, at 159-60). Pursuant to the appellate court's order, the trial court merged Counts 9 and 10 for sentencing purposes as allied offenses of similar import. *Id.* The state elected to have Petitioner sentenced on Count 9, and the trial court imposed a ten year prison term on that count, to run concurrently with Count 5 and Counts 1 and 2. *Id.* The aggregate sentence imposed was twenty-one years in prison. *Id.*

On May 13, 2013, Petitioner, through counsel, filed a timely notice of appeal. (Ex. 20, Doc. 7-1, at 161-62). In his brief, Petitioner raised a single assignment of error:

1. In fashioning the sentence, the trial court violated [Petitioner's] constitutional rights guaranteed by the 8th Amendment to the United States Constitution and his statutory rights under R.C. § 2929.11.

(Ex. 21, Doc. 7-1, at 180-91). The state filed a brief in response. (Ex. 22, Doc. 7-1, at 192-95). On March 7, 2014, the appellate court rejected Petitioner's argument and affirmed the judgment of the trial court. (Ex. 23, Doc. 7-1, at 196-202).

*Motion to Withdraw Guilty Plea*

On January 21, 2016, Petitioner, through counsel, filed a motion to withdraw his guilty pleas to attempted murder and kidnapping (Counts 1, 2, and 5). (Ex. 24, Doc. 7-1, at 203-11). Petitioner argued he should be permitted to withdraw his guilty plea, arguing he pleaded guilty to crimes he did not commit. *Id.* He relied on the Ohio Supreme Court's intervening decision in *State v. Nolan*, 141 Ohio St. 3d 454 (2014). *Id.* The state filed a memorandum in response. (Ex. 25, Doc. 7-1, at 213-15). Petitioner filed a reply. (Ex. 26, Doc. 7-1, at 216-22). On March 17, 2016, the trial court denied Petitioner's motion. (Ex. 27, Doc. 7-1, at 223-25).

Petitioner filed a timely appeal of the trial court's decision. (Ex. 28, Doc. 7-1, at 226-31). On May 6, 2016, the appellate court dismissed the appeal, holding that the trial court had lacked jurisdiction to consider Petitioner's motion to withdraw his guilty plea after his conviction was affirmed on appeal. (Ex. 29, Doc. 7-1, at 232-34).

Petitioner did not file an appeal to the Supreme Court of Ohio.

## Federal Habeas Petition

On December 20, 2016, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus, and memorandum in support, raising two grounds for relief:

1. [Petitioner] was deprived of due process of law when he did not make a knowing and voluntary decision to plead guilty.

2. [Petitioner] received ineffective assistance of counsel in the district court because he [sic] counsel advised him to plead guilty to crimes he did not commit.

(Doc. 1-2, at 5, 9) (capitalization altered).

<h2 style="text-align:center">DISCUSSION</h2>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a one-year limitations period for habeas petitions brought by individuals challenging their state court convictions. 28 U.S.C. § 2244(d). Under 28 U.S.C. § 2244(d)(1), the limitations period begins to run from the latest of four events:

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Subsections (A) and (D) are relevant in the instant case and will be discussed below.

*Date on Which Factual Predicate Could Have Been Discovered – Subsection (D)*

Petitioner primarily focuses his argument on subsection (D), which provides that the statute of limitations begins to run "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner contends his claims are based on two "discoveries" subsequent to his guilty plea: "(1) the discovery that the 'foreseeability' basis underlying his guilty plea [was] insufficient under Ohio

law; and (2) the discovery that the state courts of Ohio could not provide relief to [Petitioner] despite that insufficiency" based on *State v. Nolan*, 141 Ohio St. 3d 454 (2014). (Doc. 8, at 2). Therefore, he contends, the statute of limitations could not have begun to run until May 6, 2016, when the Ohio appellate court dismissed his appeal for lack of jurisdiction ("discovery" number two, above). *Id.*; *see also id.*, at 3 (noting Petitioner "discovered the 'factual predicate' of his habeas claim when the Court of Appeals dismissed his state court appeal on May 6, 2016, thereby confirming that his invalid guilty plea could not be remedied by the Ohio state courts") (emphasis in original). *Id.* Respondent contends neither the Ohio Supreme Court's decision in *Nolan*, nor the May 6, 2016 appellate court decision can serve as a factual predicate for purposes of § 2244(d)(1)(D), and, Petitioner has also not shown the diligence required by that section. (Doc. 7, at 10-14; Doc. 9, at 2-4). For the reasons discussed below, the undersigned agrees with Respondent.

Relying on *Johnson v. United States*, 544 U.S. 295 (2005), Petitioner contends that the state court order dismissing his appeal constitutes the "factual predicate" of his habeas claim. (Doc. 8, at 5). In *Johnson*, the Supreme Court held that the vacatur of a prisoner's prior state court conviction (which had been used to enhance the prisoner's federal sentence) was a matter of fact, which could re-start the one year statute of limitations under AEDPA, provided the prisoner had acted with due diligence in seeking the order. 544 U.S. at 302. Cases post-*Johnson*, however, have distinguished between state court decisions in a petitioner's *own case* (which may in some instances serve as a factual predicate), and cases in which a state court clarifies state law in a case in which the petitioner is not a party. *See Lo v. Endicott*, 506 F. 3d 572, 576 (7th Cir. 2007) (holding that "a state court decision modifying substantive law" does not constitute a factual predicate under § 2244(d)(1)(D)); *Shannon v. Newland*, 410 F.3d 1083, 1089 (9th Cir. 2005) ("If a change in (or clarification of) state law, by a state court, in a case in which [the defendant] was not a party, could

qualify as a 'factual predicate,' then the term 'factual' would be meaningless."); *see also Whiteside v. United States*, 775 F.3d 180, 183-84 (4th Cir. 2014) (en banc) (a state court decision did not qualify as a factual predicate because it merely "announced a generally applicable legal rule" and "did not directly alter [the petitioner's] legal status.").

The Ninth Circuit observed that whereas "in *Johnson*, the state-court decision in question was a decision in the petitioner's *own case*" that "directly eliminated [the petitioner's] legal status as a convict", the case at issue in *Newland* "merely established an abstract proposition of law" and "had no direct effect on [the petitioner's] legal status." 410 F.3d at 1088-89. And, as the Seventh Circuit explained, a state court order that is a "fact within [the petitioner's] own litigation history that changed his legal status," is needed to "constitute a trigger for a new limitations period under AEDPA". *Lo*, 506 F.3d at 575-76.

Here, the same is true for the Ohio Supreme Court's *Nolan* decision. That decision announced a new legal rule—that attempted felony murder under Ohio Revised Code § 2903.02(B) is not a cognizable claim under Ohio law. 141 Ohio St. 3d at 456. This decision did not directly alter Petitioner's legal status in any way, and as such, cannot serve as the "factual predicate" for his claims.

Petitioner, however, does not simply argue that *Nolan* serves as the "factual predicate" under § 2244(d)(1)(D), but rather argues that decision coupled with the later dismissal of his appeal by the appellate court (a decision in his own case) serves as the "factual predicate" triggering a later start date for the statute. The undersigned finds this argument flawed as well. Here, Petitioner moved to withdraw his guilty plea. (Ex. 24, Doc. 7-1, at 203-11). That motion was denied by the trial court. (Ex. 27, Doc. 7-1, at 223-25). Petitioner appealed and the appellate court held the trial court had lacked jurisdiction to consider the motion to withdraw, and dismissed the appeal. (Ex.

29, Doc. 7-1, at 232-34). If a petitioner could—by presenting an argument to the state courts (valid or not) based on subsequent legal precedent, and receiving a denial or dismissal—unilaterally reset the statute of limitations, the statute would be meaningless.[3] As the Seventh Circuit explained:

> The [state court's] clarification of the law does not constitute a "factual predicate" within the meaning of § 2244(d)(1)(D). Unlike the state court vacatur in *Johnson, State v. Head* was not a fact within [the petitioner's] own litigation history that changed his legal status. As in *Shannon,* the [state court's] decision could arguably help [the petitioner's] claim, but that does not make the decision a fact subject to proof or disproof. Moreover, adopting [the petitioner's] argument would render the limitations in § 2244(d)(1)(C) meaningless. Section 2244(d)(1)(C), the primary vehicle through which court decisions restart the limitations period, provides that the decision must involve a constitutional right recognized by the Supreme Court, and that the Court must make the right retroactively applicable to cases on collateral review. **To suggest, as [the petitioner] does, that any decision by any court on any issue could constitute a "factual predicate" would swallow up the specifically delineated limitations in § 2244(d)(1)(C).**

*Lo,* 506 F.3d at 575-76 (emphasis added). Moreover, the Supreme Court, while not directly confronting the issue, has explained that § 2244(d)(1)(D) applies to cases "in which *new evidence* 'could have been discovered through the exercise of due diligence.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (2013) (quoting 28 U.S.C. § 2244(d)(1)(D)) (emphasis added).[4]

---

3. Petitioner argues this presents a catch-22, because upon discovery of this claim, he would have been faced with two options: "either (a) file a habeas petition and risk defeat for failure to exhaust state court remedies, or (b) file a state court motion to withdraw his guilty plea and risk the running of the habeas statute of limitations in the interim." (Doc. 8, at 5-6). However, as Respondent correctly points out, the Supreme Court addressed this situation in *Pace v. DiGuglielmo,* explaining that a petitioner "seeking state postconviction relief might avoid this predicament . . . by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." 544 U.S. 408, 416 (2005) (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005)).

4. The Sixth Circuit's interpretation of § 2244(d)(1)(D)'s federal counterpart, § 2255(f)(4), is also instructive. Under § 2255(f)(4), the statute-of-limitations period for a petition challenging a federal conviction may begin from the date "on which the *facts* supporting the claim ... could have been discovered." 28 U.S.C. § 2255(f)(4) (emphasis added). Section 2255(f)(4) is "directed at the discovery of new facts, not newly-discovered law." *Phillips v. United States,* 734 F.3d 573, 580 (6th Cir. 2013); *see also Whiteside*, 775 F.3d at 183 (collecting cases under both § 2255(f)(4) and § 2244(d)(1)(D)). While § 2255(f)(4) uses similar, but not identical, language as § 2244(d)(1)(D), courts have interpreted the two provisions in tandem. *See Lackawanna Cnty. Dist. Att'y v. Coss,*

The Ohio appellate court decision, though it was a decision in Petitioner's own case, did not alter his legal status in any way. Rather, it merely held that the trial court lacked jurisdiction to consider Petitioner's motion. See Ex. 28, Doc. 7-1, at 226-31. Petitioner is correct that *Johnson* stands for the principle that some state court decisions may present a new "factual predicate". However, here—as in *Lo*, *Newland*, and *Whiteside*—the situation presented here a different one than that presented by *Johnson* (where the petitioner received a state order vacating his prior conviction, thus altering his own legal status). Thus, even assuming the *Nolan* decision applies to Petitioner's case—an issue discussed in greater detail below—neither it, nor the appellate court's dismissal of Petitioner's appeal, can serve as a factual predicate to support a later start date for Petitioner's statute of limitations.

Moreover, Petitioner's *Nolan* argument is flawed. The *Nolan* decision upon which he relies addresses the attempted *felony* murder statute, not the attempted murder statute under which he was indicted (and to which he pled guilty). Thus, even if a legal decision such as *Nolan* could serve as a factual predicate for purposes of § 2244(d)(1)(D), it is inapplicable here. And, to the extent Petitioner argues the "specific intention" language in *Nolan* serves as a new factual predicate for his claim, that portion of the *Nolan* opinion was merely citing to and quoting from the existing mental state statutes:

> One obvious requisite of the statute is that a person cannot commit an attempt offense unless he or she has acted purposely or knowingly. Thus, to be convicted of an attempt crime, a defendant must be shown to have attempted to commit the crime and to have acted with the "specific intention to cause a certain result" or the "specific intention to engage in conduct" of a certain nature, R.C. 2901.22(A), or to have acted when "aware that his conduct will probably cause a certain result or will probably be of a certain nature," R.C. 2901.22(B).

532 U.S. 394, 402 (2001); *Whiteside,* 775 F.3d at 183 n.2. Applying *Phillips* to § 2244(d)(1)(D) supports the conclusion that "newly-discovered law" cannot restart the limitations period for a § 2254 petition; only new facts may do so.

141 Ohio St. 3d at 455. The undersigned agrees with Respondent that this portion of the opinion "did not break new ground". (Doc. 9, at 4). Therefore, any claim about the mental state required to commit these crimes was available to Petitioner before *Nolan*, and he has not shown entitlement to a later start date under § 2244(d)(1)(D) on these grounds.[5] Other than his argument based on *Nolan* and subsequent events, Petitioner presents no other argument about when a diligent individual could have discovered this factual predicate. As such, the undersigned concludes Petitioner has failed to show he is entitled to a later start date under § 2244(d)(1)(D). *See Townsend v. Lafler*, 99 F. App'x 606, 607 (6th Cir. 2004) ("The question under the provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care."); *see also Ratliff v. Jefferys*, 2007 WL 4248173, at *5 (N.D. Ohio) ("[T]he AEDPA statute of limitations begins to run under § 2244(d)(1)(D) 'when the

---

5. Moreover, even assuming *arguendo* that *Nolan* could serve as the factual predicate for Petitioner's claims for purposes of § 2244(d)(1)(D) (and the undersigned finds above that it *cannot*), Petitioner has failed to make the necessary showing of diligence discovering and pursuing his claim. Petitioner "bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D)." *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006). In his memorandum in support of his Petition, Petitioner argues that "upon reading *Nolan* in early 2015, [he] diligently sought state court relief by moving to withdraw his guilty plea in the Sandusky County Court of Common Pleas." (Doc. 8, at 4). It is unclear exactly when "early 2015" is, but Petitioner did not file his motion to withdraw his guilty plea until January 2016. (Ex. 24, Doc. 7-1, at 203-11). This is a delay of at least six months, as "early" at least implies sometime during the first half of 2015. Additionally, after the trial court denied Petitioner's motion on May 6, 2016, Petitioner waited over seven months to file his Petition with this court. Taken together, these gaps show a lack of diligence first in seeking to discover the factual predicate of the claim, and then in acting on that claim. *See Greene v. Lafler*, 457 F. App'x 485, 486 (6th Cir. 2012) ("The district court did not abuse its discretion in concluding that Greene's [five-month] delay in filing this petition alone was evidence of a lack of diligence."); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 752 (6th Cir. 2011) (finding that a delay of over five months in filing a federal habeas petition suggests a lack of diligence); *Allen v. Yukins*, 366 F.3d 396, 404 (6th Cir. 2004) (delay of seven months between conclusion of state postconviction proceedings and filing of federal habeas petition demonstrated lack of diligence).

prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'") (quoting *Owens v. Boyd*, 235 F.3d 256, 259 (7th Cir. 2000).

*Date on Which Conviction Became "Final" – Subsection (A)*

Because Petitioner has not shown he is entitled to a later start date as provided by subsection (D), the undersigned turns to when Petitioner's conviction became final under § 2244(d)(1)(A), and whether he is entitled to any tolling of that period. Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). Here, Petitioner's conviction became final on April 21, 2014—the expiration of the 45-day period for filing an appeal of the state appellate court decision to the Ohio Supreme Court. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2011) ("For petitioners who pursue direct review all the way to this Court, the judgment becomes final . . . when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final . . . when the time for pursuing direct review in this Court, or in the state court, expires."). The statute of limitations expired one year later, on April 21, 2015, absent tolling. The Petition, dated December 20, 2016, is therefore time-barred unless tolling is appropriate or Petitioner has made a showing of actual innocence to excuse his tardiness.

*Statutory Tolling*

A properly filed post-conviction petition can serve to toll the statute of limitations in habeas cases. 28 U.S.C. § 2244(d)(2). A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the

applicable laws and rules governing filings, such as those prescribing the time limits for filing." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Once the statute of limitations expires, state collateral review proceedings can no longer serve to avoid the time-bar. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.") (internal quotation and citation omitted). Relevant to the instant case, a motion to withdraw a guilty plea does not re-start the statute of limitations clock. *Eberle v. Warden*, 532 F. App'x 605, 609 (6th Cir. 2013).

Statutory tolling does not assist Petitioner in this case (nor does he explicitly argue for such). The statute of limitations expired April 21, 2015, absent tolling. It was not until January 21, 2016 that Petitioner filed a motion to withdraw his guilty plea. (Ex. 24, Doc. 7-1, at 203-11). Because this occurred after the AEDPA statute of limitations had run, it cannot serve as a basis for statutory tolling. *Vroman*, 346 F.3d at 602; *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003) ("a motion for state post-conviction review that is filed following the period for seeking habeas relief cannot toll that period because there is no period remaining to toll"); *Eberle*, 532 F. App'x at 605. Absent equitable tolling or a showing of actual innocence, therefore, the petition is untimely.

### *Equitable Tolling / Actual Innocence*

Petitioner alternatively argues that if the Court deems his Petition untimely, his tardiness should be excused due to equitable tolling based on a credible showing of actual innocence. (Doc. 8, at 6-12). Respondent contends Petitioner has not shown an entitlement to equitable tolling or that his late filing should be excused based on actual innocence. (Doc. 7, at 16; Doc. 9, at 4).

Petitioner has the burden of establishing his entitlement to equitable tolling. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). To meet this burden, Petitioner must show that: 1)

extraordinary circumstances prevented the filing of his petition, and 2) he was diligent in pursuing his case. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is only be granted "sparingly". *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006). In the extreme circumstance, an untimely filing may be excused through a showing of actual innocence under the "miscarriage of justice" standard. *Schlup v. Delo*, 513 U.S. 298 (1995).

*Actual Innocence*

A so-called gateway claim of actual innocence permits a federal habeas court to excuse the expiration of the statute of limitations and consider the merits of the petition. "In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931 (2013). When confronted with an actual innocence claim, "a court cannot consider a petition's untimeliness as 'an absolute barrier to relief.'" *Eberle,* 532 F. App'x at 612 (quoting *McQuiggin*, 133 S. Ct. at 1928). Instead, the timing of the actual innocence claim is a factor in weighing the reliability of the proof of innocence. *McQuiggin*, 133 S. Ct. at 1935 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing.").

To overcome the expiration of the statute of limitations using a gateway claim of actual innocence, a habeas petitioner must first show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup,* 513 U.S. at 327. In order to advance a credible actual innocence claim, however, the petitioner must support his allegations with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.

Because a gateway actual innocence claim is a form of equitable tolling, it is a remedy that is granted sparingly. *Souter v. Jones,* 395 F.3d 577, 588 (6th Cir. 2005). The Supreme Court has repeatedly counseled that actual innocence is an exception that is rarely granted, and only in the most extraordinary circumstances. *See Schlup*, 513 U.S. at 324 (reasoning that, because new reliable evidence will be unavailable "in the vast majority of cases, claims of actual innocence are rarely successful"); *see also McQuiggin*, 133 S. Ct. at 1928 ("We caution, however, that tenable actual-innocence gateway pleas are rare."); *House*, 547 U.S. at 538 ("The *Schlup* standard is demanding and permits review only in the 'extraordinary' case.") (quoting *Schlup*, 513 U.S. at 327).

As the Supreme Court has stated, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Similarly, a claim of legal innocence is insufficient to raise a miscarriage of justice claim. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.") (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

Petitioner argues, in essence, that he pled guilty to conduct which was not a crime, and thus he is "actually innocent". *See* Doc. 8, at 6-12. This is so, he contends, because there was no evidence he had the mens rea required to sustain a conviction for attempted murder and kidnapping. [6] This argument is, in part, based on the Ohio Supreme Court's decision in *Nolan*,

_____

6. Petitioner's claim regarding his aggravated burglary conviction is similar, but separate. There, he argues his aggravated burglary conviction cannot be sustained because he was not charged as an accomplice and he did not enter the residence. As Respondent correctly points out, however, this claim fails under Ohio law. Under Ohio law, a separate charge of complicity is not required to sustain a conviction. *State v. Keenan*, 81 Ohio St. 3d 133, 151 (1998) ("One who '[c]onspire[s] with another to commit [an] offense in violation of [R.C.] 2923.01' is also guilty of complicity under R.C. 2923.03(A)(3). R.C. 2923.03(F) states, 'A charge of complicity may be stated in terms of this section, or *in terms of the principal offense.*' This provision places defendants on notice that the jury may be given a complicity instruction even though the defendant has been charged as a

which he contends "clarified [the] legal basis that render[ed] his guilty plea invalid." *Id.* at 10. In response, Respondent argues Petitioner has not made a showing of actual innocence.

Relying on *Waucaush v. United States*, 380 F.3d 251 (6th Cir. 2004), Petitioner contends the Court must "consider whether the record contains evidence that the State of Ohio satisfied its burden in convicting" Petitioner. (Doc. 8, at 8). He contends that "there was no allegation by the prosecution, much less an actual judicial finding or admission by [Petitioner] that he acted with the 'specific intention' required to convict him of the crimes to which he pled guilty." *Id.* Petitioner contends that his trial counsel, the prosecutor, and the trial court "all spoke in terms of 'foreseeability'" rather than specific intent and "[i]t was not until the Supreme Court of Ohio clarified in *Nolan* that all parties were mistaken in this regard" that he realized the error. *Id.* Respondent replies that *Nolan* "did not break new ground with regard to the purposeful mental state" required, but was "merely reciting—not redefining" that mental state. (Doc. 9, at 4). Respondent also contends that the references to "foreseeability" during the plea hearing related to the *causation* element of the offenses, rather than the *mens rea* element. *Id.* at 5.

In *Waucaush*, the Sixth Circuit addressed a Racketeer Influenced and Corrupt Organization Act ("RICO") claim. 380 F.3d at 254. There, the Petitioner, pled guilty to a RICO offense based on a legally erroneous understanding of an element of the offense. *Id.* The Supreme Court later clarified what the element meant. The Sixth Circuit explained that "[t]his type of misunderstanding—a misconception about the statute's legal scope that results in the defendant pleading guilty to conduct which was not a crime—typifies an unintelligent guilty plea." *Id.* Therefore, the court held, the Petitioner had established actual innocence to excuse his procedural

principal offender."). As such, any claim Petitioner is "actually innocent" of his aggravated burglary conviction on these grounds must fail

default. *Id.* at 258 ("Because a reasonable jury could not conclude that Waucaush's enterprise, the CFP, affected interstate commerce, Waucaush is actually innocent of violating RICO. His actual innocence excuses his failure to challenge his plea on direct appeal, such that we may consider the challenge now."). By way of example, the Sixth Circuit explained:

> Contrary to the positions of the Government and the district court, Waucaush may be actually innocent even though he admitted as part of his plea that his activities "affected interstate commerce." To illustrate: imagine that Waucaush had admitted to stealing apples from the Post Office, was advised by his counsel and the court that apples were vegetables, and pled guilty to "stealing vegetables from a federal building." If the Supreme Court later held that, as a matter of law, apples were not vegetables, Waucaush would be actually innocent of "stealing vegetables." Just as Waucaush's misinformed admission of a legal conclusion would not have turned apples into vegetables, his guilty plea in today's case could not have created an effect on commerce that the law did not otherwise recognize.

*Id.* at 255.

Petitioner contends he "sets forth not only a credible claim of actual innocence, but in fact the exact claim of actual innocence that the Sixth Circuit explicitly approved in *Waucaush.*" (Doc. 8, at 10). For the reasons discussed below, the undersigned disagrees.

In *Nolan*, the Ohio Supreme Court held that attempted felony murder, under Ohio Revised Code § 2903.02(B), is not a cognizable crime in Ohio because "it is impossible to purposely or knowingly cause an unintended death." 141 Ohio St. 3d at 456. Petitioner, however, pled guilty to two counts of attempted murder in violation of Ohio Revised Code § 2903.02(A). *See* Ex. 3, Doc. 7-1, at 20-23 (guilty plea); Ex. 1, Doc. 7-1, at 4-18 (indictment). Petitioner's case did not involve a charge of attempted felony murder. As such, the *Nolan* decision is simply inapplicable, and subsequent Ohio cases confirm this. *See State ex. Rel. Tucker v. Matia*, 147 Ohio St. 3d 418, 418-19 (2016) ("[T]he language of Tucker's indictment, to which he pleaded guilty, tracks the language of R.C. 2923.02, which sets out the elements of attempt, and R.C. 2903.02(A), which sets out the elements of the offense of murder—not R.C. 2903.02(B), which sets out the elements of felony

murder. In other words, Tucker was sentenced for attempted murder, not attempted felony murder, and *Nolan* therefore does not apply."); *State v. Collins*, 2017 WL 713655, at *4 (Ohio Ct. App.) ("In summary, *Nolan* merely held that an attempt to commit murder under *division (B)* of R.C. 2903.02 (or "attempted felony murder") is a non-cognizable offense. The case had no effect on the pre-existing offense of attempting to commit a murder under division (A) of R.C. 2903.02" and the defendant "was indicted for this offense [under division (A)], he pled guilty to this offense, and he was convicted of this offense."); *State v. Massalay*, 2016 WL 807653, *10 (Ohio Ct. App.) ("It is apparent that *Nolan* dealt with the impossibility of purposely or knowingly committing a strict liability offense, which does not require intent. Therefore, *Nolan* is not controlling on our issue of whether appellee proved the requisite mens rea of 'knowingly' required for the underlying offense of felonious assault based on the facts at hand."); *see also Davis v. Morgan*, 2016 WL 6493420, at *8 (S.D. Ohio) ("However, Petitioner was not charged with or convicted of attempted felony murder but, rather, of . . . attempted murder" and therefore *Nolan* is inapplicable.).

And, as set forth above, *Nolan* did not change the law regarding the mental state required for attempted murder under Ohio Revised Code § 2903.02(A). For that reason, Petitioner's argument about the mens rea element is also not well-taken. Petitioner's indictment set forth the charges at issue:

> **COUNT 1**:    On or about July 2, 2009, at 4011 State Route 600, Washington Township, Sandusky County, Ohio, the defendant did attempt to purposely cause the death of another, to wit: James Kohler.
>
> In Violation of **OHIO REVISED CODE SECTION 2903.02(A) and 2923.02 ATTEMPTED MURDER** – A felony of the First Degree.
>
> * * *
> **COUNT 2:**    On or about July 2, 2009, at 4011 State Route 600, Washington Township, Sandusky County, Ohio, the defendant did attempt to purposely cause the death of another, to wit: Mary Kohler.

In Violation of **OHIO REVISED CODE SECTION 2903.02(A) and 2923.02 ATTEMPTED MURDER** – A felony of the First Degree.

* * *

**COUNT 5:**     On or about July 2, 2009, at 4011 State Route 600, Washington Township, Sandusky County, Ohio, the defendant, by force, threat, or deception, by any means, did restrain the liberty of another person to facilitate the commission of any felony or flight thereafter, to wit: James Kohler.
In Violation of **OHIO REVISED CODE SECTION 2905.01(A)(2) KIDNAPPING** – a felony of the First Degree

(Ex. 1, Doc. 7-1, at 4-6).

At the plea hearing, the prosecutor noted Petitioner would "be entering a plea of guilty to a series of offenses set forth in the Indictment", and defense counsel agreed. (Doc. 1-4, at 2-3); *see also id.*, at 3 (withdrawing not guilty plea, and entering guilty pleas to Counts 1, 2, 5, 9, and 10 in the indictment). The language of the attempted murder charges in the indictment tracks the language of the elements of attempted murder, as defined by the murder statute (Ohio Revised Code § 2903.02) and the attempt statute (Ohio Revised Code § 2923.02). *See* Ex. 1, Doc. 7-1, at 4). "The elements of attempted murder, as defined by R.C. 2923.02 and 2903.02, are (1) purposely, (2) engaging in conduct which, if successful, would (3) cause another's death." *State v. Kidder*, 32 Ohio St. 3d 279, 283 (1987). At the plea hearing, the prosecutor summarized the evidence:

State would indicate in this case that the evidence, if this matter went to trial, would indicate that this defendant, on two occasions prior to July 2nd of '09, went to the Kohler residence in possession of a firearm, identified himself to Mr. Kohler as Jimmy Gomez, and on those two occasions sold firearms to Mr. Kohler.

At that time he was able to observe the interior of the Kohler residence, as well as the box in which Mr. Kohler kept the cash which he used to pay this defendant for those firearms. Mr. Kohler later was able to identify Mr. Houston as the person that had been to his residence and identified himself as Mr. Gomez. It'd be the State's theory that those were opportunities to, if you will, case the residence, which then resulted in the offenses that occurred on July 2nd of '09.

At that point the evidence would be that Mr. Houston had recruited Ronald Ruby and Mr. Bidwell, his two codefendants, to go to the Kohler residence. Those

individuals, with the knowledge and planning by Mr. Houston, then entered the Kohler home. The larger of the two – The Kohler's were not able to identify the two individuals, specifically, because they were covered by masks and wore gloves.

The larger of the two proceeded to beat Mr. Kohler when he found him in a recliner, after he had broken through the door into the residence. Subsequent thereto, the larger of the two went through a sliding door, opened the door and admitted the smaller of the two individuals. The beating continued and the larger individual indicated to Mr. Kohler that if he didn't give up the money he would kill him.

Subsequent thereto, this individual looked at Mr. Kohler, flung him from his chair across the room, causing him to suffer injuries when he collided with the fireplace, I believe it was.

Mrs. Kohler was awakened by someone who came into her room, began to strike her also with fists. Subsequently both individuals were tied up with black straps that had been taken to the residence for the purpose of securing the Kohlers while the theft took place. Mrs. Kohler was strapped about the ankles and her hands were strapped behind her back, and ultimately, she was pushed partially down the stairs.

Subsequent thereto, 30-plus firearms were taken from the Kohler residence by the defendants. Neither of the Kohlers can specifically identify Mr. Houston as being in their residence that night. The State's position, however, being that, be that as it may, the defendant, in planning what amounts to a violent crime and home invasion involving the use of black straps to tie the people up and to take their firearms and also involving the use of recruiting . . . [others, who there was some] indication was a cage fighter and a heroin addict, and using them to enter into the home, it is certainly foreseeable that the end result was to be an attempted murder and rather severe beating of Mr. Kohler who ended up in the hospital for five days and Mrs. Kohler who was hospitalized for approximately one day after this incident.

(Doc. 1-4, at 9-11).

This description shows the state explained the evidence would show Petitioner "(1) purposely, (2) engag[ed] in conduct which, if successful, would (3) cause another's death." *Kidder*, 32 Ohio St. 3d at 293. Contrary to Petitioner's argument, this is not a case where Petitioner pled guilty to something that was later determined not to be a crime, nor is this a case where Petitioner was unaware of the elements of the crime to which he pled guilty. Those elements were spelled

out in the indictment, and the facts underlying the charges were spelled out by the prosecutor at the plea hearing. Petitioner accepted these facts and pled guilty to the charges in the indictment. (Doc. 1-4, at 3-4, 11).[7] Because Petitioner therefore has not made a showing that he is actually innocent of the crimes of which he was convicted, the untimeliness of his Petition cannot be excused.

Additionally, Petitioner does not present any other extraordinary circumstance that stood in the way of his filing, or (as discussed above), due diligence, to justify equitable tolling. *See Keenan v.* Bagley, 400 F.3d 417, 421 (6th Cir. 2005) (Petitioner must show his failure to meet the deadline "unavoidably arose from circumstances beyond [Petitioner's] control") (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). Petitioner's *pro se* status, and lack of legal understanding, is not sufficient. *See Johnson*, 544 U.S. at 311 ("But we have never accepted *pro se* representation alone or procedural ignorance

---

7. The trial court's substantive denial of Petitioner's motion to withdraw his guilty plea based on *Nolan* is instructive (even though it was later overturned by the appellate court):

> [Petitioner]'s counsel makes much of the influence the prosecutor and defense counsel . . . had on the Court by using the term "foreseeable" when describing [Petitioner's] mental culpability for the attempted murders of Mr. and Mrs. Kohler by Ruby and Bidwell. It was only argument after the fact of the plea. Such references were irrelevant to the issue since no offer of proof is required on a guilty plea. [Petitioner] is stuck as an accomplice even though he now fervently wishes he never met Ruby and Bidwell.
>
> * * *
>
> As an accomplice, [Petitioner] shares fully in the criminal behavior committed by Ruby and Bidwell. In hindsight it should be clear to [Petitioner] that but for him organizing the burglary effort, he would not be in his present circumstance. He was the captain of the ship.
>
> * * *
>
> In short, there was no trial where the State of Ohio would have to prove the elements of the particular offense, e.g. purpose or knowingly. He pled to the specific offenses as presented in the indictment.

(Ex. 27, Doc. 7-1, at 224-25).

as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). As such, the undersigned concludes Petitioner has not shown an entitlement to equitable tolling, or that his untimeliness may be excused.

CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends Respondent's Motion to Dismiss (Doc. 7) be granted.


s/James R. Knepp, II        <br>
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).