# STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY L. HOUSTON, | ) | CASE NO. 3:16-cv-3043 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WARDEN JOHN COLEMAN, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation of Magistrate Judge James R. Knepp, II (Doc. No. 12 ["R&R"]) recommending granting respondent's motion to dismiss (Doc. No. 7 ["Mot."])[1] this petition for writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner filed objections to the R&R. (Doc. No. 13 ["Obj."].) Respondent filed no opposition. Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters raised in the objections. For the reasons discussed below, the R&R is accepted and the petition is dismissed as time-barred.

## I. BACKGROUND

On July 30, 2009, petitioner was indicted by a Sandusky County, Ohio grand jury on two counts each of attempted murder (§ 2903.02(A)[2] and § 2923.02), felonious assault (§ 2903.11(A)(1)), kidnapping (§ 2905.01(A)(2)), and aggravated robbery, with a firearm

---

[1] Petitioner filed his opposition to the motion, styled as a "reply." (Doc. No. 8 ["Opp'n"].) Respondent filed a reply. (Doc. No. 9 ["Reply"].) These documents, as well as the original petition (Doc. No. 1 ["Pet."]) have all been considered by the Court in conducting its de novo review.

[2] All statutory citations are to the Ohio Revised Code.

specification (§ 2911.01(A)(3)); one count each of aggravated burglary (§ 2911.11(A)(1)) and tampering with evidence (2921.12(A)(1)); and thirty-three counts of grand theft (§ 2913.02(A)(1)(B)(4)). (Mot. at 137-151[3].)

On April 26, 2010, petitioner entered guilty pleas to two counts of attempted murder, one count of kidnapping, one count of aggravated burglary with a firearm specification (all first degree felonies), and one count of grand theft (a third degree felony). (*Id.* at 153-56.) On May 11, 2010, he was sentenced to an aggregate of twenty-three (23) years in prison. (*Id*. at 157-58, as corrected at 159.)

On June 10, 2010, trial counsel timely filed petitioner's notice of appeal. Then, represented by new counsel, petitioner filed his appellate brief, raising three assignments of error:

1. Appelant's [sic] sentence was contrary to law and constituted an abuse of discretion.

2. In contravention of recent U.S. Supreme Court precedent, *Oregon v. Ice*, the 6th Amendment to the U.S. Constitution, and the re-enacted Ohio sentencing code, the trial court erred by imposing consecutive sentences without making the required statutory findings pursuant to R.C. §§ 2929.14(E)(4), 2929.41(A).

3. Trial counsel rendered ineffective assistance of counsel in violation of the 6th Amendment to the U.S. Constitution and Article I, Sections 10, 16 of the Ohio Constitution.

(*Id.* at 168.)[4] On September 16, 2011, the Ohio court of appeals affirmed the trial court's judgment. (*Id.* at 217-28.)

---

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

[4] Notably, the ineffective assistance of counsel claim made no mention of the issue now being raised relating to counsel's advice to plead guilty even though the intent element was allegedly not satisfied. Rather, at that point, petitioner was claiming ineffective assistance only due to counsel's failure to (1) file a motion to waive court costs; and (2) enter any objections on the record regarding two alleged sentencing errors. Although not discussed in either the motion to dismiss or in the R&R, this Court is of the view that petitioner procedurally defaulted any claim relating to the validity of his pleas. There being no discussion on this record of cause for this default or prejudice resulting

Proceeding *pro se*, petitioner appealed to the Ohio Supreme Court (*id.* at 229-30), asserting two propositions of law:

> I. The Eighth Amendment prohibits imposition of the maximum penalty [sic] on one who plains [sic] or aids a felony in the course of which an attempted murder and felonious assault is committed by cofelons but who does not himself solicit, request, command, cause, or aid the attempted to [sic] murder and feloniously [sic] assault, or intend that an attempt to murder and feloniously assault will be employed.
>
> II. The simultaneous repeal and revival of R.C. 2929.14(E)(4) and 2929.41(A) invalidated by *State v. Foster* (2006), 109 Ohio St. 3d 1, *Foster* is prospectively overruled by the holding in *Oregon v. Ice* (2009), 555 U.S. 160, and applies to those who either raised *Ice* at sentencing, on direct appeal, or pending appeal.

(*Id.* at 232.) On February 1, 2012, the Ohio Supreme Court declined jurisdiction. (*Id.* at 256.)

While this direct appeal was pending, on December 15, 2011, represented by a public defender, petitioner filed his application to reopen his direct appeal (*id*. at 257-62), asserting that his original appellate counsel was ineffective for failing to raise the meritorious assignment of error that aggravated burglary and grand theft should have been merged for sentencing purposes.[5] On February 8, 2012, the court of appeals granted the application and reopened the appeal as to the one issue raised. (*Id.* at 263-67.) On February 1, 2013, the court of appeals vacated a portion of its previous affirmance, reversed the trial court's judgment with respect to the sentence for aggravated burglary and grand theft, and remanded for a new sentencing hearing on those two counts. (*Id.* at 282-87.)

---

from it, that alone should probably preclude further consideration. *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). Nonetheless, the Court will address the objections to the R&R.

[5] Notably, for purposes of the instant petition, again there was no mention of ineffective assistance of his original appellate counsel for failure to raise any claim relating to the intent necessary to support the elements of petitioner's crimes.

On April 18, 2013, the trial court resentenced petitioner, resulting in an aggregate 21 years in prison (reduced from 23 years). (*Id.* at 292-93.) Represented by counsel, petitioner appealed (*id.* at 294-312), raising one assignment of error:

> In fashioning the sentence, the trial court violated Mr. Houston's constitutional rights guaranteed by the 8th Amendment to the United States Constitution and his statutory rights under R.C. § 2929.11.

(*Id.* at 314.) On March 7, 2014, the court of appeals affirmed the judgment. (*Id*. at 329-35.) Petitioner had until April 21, 2014 to file an appeal with the Ohio Supreme Court, but did not do so, rendering his conviction final as of that date.

Almost two years later, on January 21, 2016, represented by counsel, petitioner moved in the trial court to withdraw his guilty pleas to attempted murder and kidnapping, asserting that he had recently "learned that the factual basis offered for his plea to those charges did not meet the elements of the offenses." (*Id*. at 336, citing *State v. Nolan*, 25 N.E.2d 1016 (Ohio 2014).) On March 17, 2016, the trial court denied the motion, finding no manifest injustice under Criminal Rule 32.1 where "[a]ll matters required to be addressed under Criminal Rule 11 were covered." (*Id.* at 357.)

Represented by counsel, petitioner appealed. (*Id.* at 359.) On May 6, 2016, the court of appeals sua sponte dismissed the appeal, holding that the trial court had lacked jurisdiction to consider petitioner's motion to withdraw guilty pleas after his conviction had already been affirmed on appeal. (*Id.* at 365-67.) No appeal to the Ohio Supreme Court was filed.

On December 20, 2016, petitioner, represented by counsel, filed the instant habeas petition raising two grounds for relief:

> I. Mr. Houston was deprived of due process of law when he did not make a knowing and voluntary decision to plead guilty.

4

II. Mr. Houston received ineffective assistance of counsel in the district court [sic] because he [sic] counsel advised him to plead guilty to crimes he did not commit.

(Pet. at 23, 27.)

Respondent filed a motion to dismiss under Rule 4 of the Rules Governing Section 2254 Cases, arguing that the petition is barred by the one-year statute of limitations in 28 U.S.C. § 2244(d). Following full briefing, the magistrate judge issued his R&R recommending that the motion to dismiss be granted.

## II. DISCUSSION

### A. The Standard of Review

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections."). After review, the district judge "may accept, reject, or modify the

recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**B.     The Statute of Limitations under AEDPA**

Relevant to the instant case, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
>
> (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Cases become final on direct review for purposes of § 2244(d)(1)(A) when *certiorari* is denied or the time to file a *certiorari* petition expires. *Jimenez v. Quarterman*, 555 U.S. 113, 119-20, 129 S. Ct. 681, 172 L. Ed. 2d 475 (2009) ("direct review cannot conclude for purposes of § 2244(d)(1)(A) until the 'availability of direct appeal to the state courts,' and to this Court, has been exhausted[]") (internal citations omitted).

The statute of limitations is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim[.]"

28 U.S.C. § 2244(d)(2). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000) (emphasis in original). If a state court rejects a proceeding as not properly filed under state procedural rules, that action cannot toll the one-year period under AEDPA. *Pace v. DiGuglielmo*, 544 U.S. 408, 414, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).") (quoting *Carey v. Saffold*, 536 U.S. 214, 226, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002)); *see also Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (requirements for proper filing include "the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery[,] . . . [and] federal courts must accept a state court's interpretation of its statutes and its rules of practice.") (citation omitted).

"'The tolling provision does not, however, "revive" the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.'" *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

**C.     The Motion to Dismiss**

Respondent's motion to dismiss argues that petitioner's conviction became final pursuant to 28 U.S.C. § 2244(d)(1)(A), on or about April 21, 2014, that is, 45 days after the Ohio court of appeals affirmed the trial court's resentencing judgment. Absent any tolling, petitioner had one year to file a habeas petition. He failed to do so and, in respondent's view, the statute of limitations expired on April 21, 2015. (Mot. at 124.) By the time petitioner filed his state court motion to

7

withdraw his guilty plea on January 21, 2016, the statute of limitations had already run; therefore, according to respondent, the state court proceedings relating to that motion did not restart the statute of limitations, not having been "properly filed," and cannot prevent this case from being time-barred. (*Id.* at 124-25, citing *Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x 605, 608-09 (6th Cir. 2013).[6])

Respondent further argues that petitioner cannot rely upon § 2244(d)(1)(D) because he was aware of the factual predicate of any claim by the time of his plea hearing, since he knew which crimes he had pleaded guilty to and was present during the plea hearing. (Mot. at 125.) Further, to the extent petitioner may attempt to claim some new factual predicate, it is his burden to prove that he exercised the due diligence required to avail himself of a later start date under the above-referenced statutory section. (*Id.* at 125-27.) Finally, respondent denies any right to equitable tolling, a sparingly applied doctrine, because petitioner cannot establish that his failure to meet the deadline "arose from circumstances beyond [his] control[,]" nor can he "demonstrate[] diligence in the pursuit of his claims." (*Id.* at 130, 131).

Petitioner opposed respondent's motion, raising arguments that were addressed by the R&R and are discussed below in the context of the current objections to the R&R.

---

[6] In *Eberle*, the Sixth Circuit noted that, "if after AEDPA's statute of limitations had fully expired it could be restarted when a petitioner filed a motion to withdraw his guilty plea, . . . habeas petitioners could indefinitely extend the limitations period by delaying the filing of a withdrawal motion. This reading flushes the meaning out of AEDPA's one-year statute of limitations and upends the statute's goal of heading off unwarranted delay." *Eberle*, 532 F. App'x at 609.

8

D.  **De Novo Review**

   1.  **Objection I – The Ohio Supreme Court's Decision in *State v. Nolan* is Applicable to Houston's Guilty Plea**

Petitioner took the position in his opposition to the motion to dismiss that, once he had discovered *Nolan* "in early 2015" (Opp'n at 388), he was required to first exhaust any attempt to vacate his plea before he could bring a federal habeas petition and, therefore, had to wait for those state proceedings to run their course, which they did on May 6, 2016.[7] As aptly described by the R&R:

> Petitioner contends his claims are based on two "discoveries" subsequent to his guilty plea: "(1) the discovery that the 'foreseeability' basis underlying his guilty plea [was] insufficient under Ohio law; and (2) the discovery that the state courts of Ohio could not provide relief to [Petitioner] despite that insufficiency" based on *State v. Nolan*, 141 Ohio St. 3d 454[, 25 N.E.3d 1016] (2014).

(R&R at 419-20, quoting Opp'n at 387.[8])

Petitioner, who pleaded guilty to attempted murder, kidnapping, and aggravated burglary, claims he is entitled to release from custody because "the factual basis offered for his plea to these charges did not meet the elements of these offenses." (Pet. at 19.) Specifically, in his petition, Houston argues that he was not present during the crime and that there was no evidence that he planned or even had knowledge that any violence would occur. (*Id.* at 21.) The state told the trial court during his plea hearing that it was "certainly foreseeable that the end result was to be an attempted murder . . . ." (*Id.* at 57, quoting from change of plea transcript, Pet. Ex. 2.) Defense

---

[7] Petitioner claims he was in a "catch-22" position of either filing a habeas petition that would be rejected for failure to exhaust or filing a state-court motion and risk running out of time under AEDPA. The R&R correctly notes that the Supreme Court has identified a procedure to avoid any such dilemma: the petitioner can file a "protective petition" and ask the federal court to stay proceedings until state court remedies already in process are exhausted. (R&R at 422 n.3, citing *Pace*, 544 U.S. at 416-17.) Petitioner has not specifically objected to this portion of the R&R.

[8] The R&R cites to the actual page numbers in relevant documents; for consistency, the Court has conformed those numbers to the page ID numbers in CMECF.

counsel concurred that the violence was "reasonably foreseeable." (*Id.* at 58.) Petitioner claims that he "was never informed at the Change of Plea Hearing of the elements of the offenses to which he was pleading guilty." (*Id.* at 21.)

Based on these facts, petitioner asserts both a due process violation and ineffective assistance of trial counsel. To establish the timeliness of these claims, Houston asserts that he "was first alerted to the issue [*i.e.*, the purported 'factual predicate' for his petition] when he read the Ohio Supreme Court's ruling in [*Nolan*,]" (*id.* at 19), whereupon he promptly obtained counsel and sought to withdraw his guilty plea, but did not learn until May 6, 2016, that "the state courts of Ohio could not provide relief" for his allegedly invalid guilty pleas (R&R at 420, citing Opp'n at 387). He claims his petition was timely because it was filed on December 20, 2016, well within one year of May 6, 2016.

The R&R rejected *Nolan* as a "factual predicate" for this petition, concluding that *Nolan*'s new rule – that attempted felony murder is not a cognizable crime under Ohio law – was inapplicable here, where petitioner's crime was attempted murder, not attempted *felony* murder. The R&R further noted that *Nolan* "'merely established an abstract proposition of law' and 'had no direct effect on [the petitioner's] legal status.'" (*Id.* at 421, quoting *Shannon v. Newland*, 410 F.3d 1083, 1088-89 (9th Cir. 2005) (holding that "If a change in (or clarification of) state law, by a state court, in a case in which [the defendant] was not a party, could qualify as a 'factual predicate,' then the term 'factual' would be meaningless.").)

In his first objection, petitioner argues that the R&R adopted a "technical distinction" and completely overlooked that the operative word in *Nolan* was "attempt." He claims that *Nolan* stands for the general proposition that "the mental state of 'specific intention' was the required

10

mens rea to convict [him] of an *attempt* crime in 2009, yet he was not advised of that legal standard by his attorney, the prosecutor, or the Court." (Obj. at 437, emphasis in original.)

Petitioner's position is incorrect because it reads *Nolan* too broadly. Even if its *legal* conclusion could be construed as the *factual* predicate for a habeas petition,[9] *Nolan*'s teaching is unavailing for petitioner's purposes. *Nolan* stands for the simple proposition that Ohio does not recognize a crime of "attempted felony murder" since it is a logical impossibility. Petitioner's crime was attempted murder, and specific intent to kill has always been an element of the crime of attempted murder. Therefore, *Nolan* offers no basis upon which to claim any new "factual predicate" for habeas purposes.

Petitioner argues that "[t]o deny [him] any benefit from *Nolan* on the grounds that 'any claim about the mental state required to commit these crimes was available to [p]etitioner before *Nolan*' would effectively require non-legally trained criminal defendants, like Houston, to question the law as explained by all of the legal professionals involved in a criminal case." (Obj. at 437, quoting R&R at 424.) He argues that "[t]he ultimate issue is whether [he] was properly advised of the mental state required to convict him of the crimes to which he pled guilty." (*Id.*)

While it is true that the R&R noted its agreement with respondent that *Nolan* "did not break new ground" with respect to Ohio's mental state statutes (*see* R&R at 424), the more fundamental reason why the R&R rejected any application of *Nolan* was because it did not address the "attempt" crime for which petitioner was convicted and, therefore, can offer no support for petitioner's position.[10]

---

[9] The Court, however, explicitly states that it does not accept that proposition. *See Shannon*, 410 F.3d at 1089 ("a state-court decision establishing an abstract proposition of law arguably helpful to the petitioner's claim does not constitute the 'factual predicate' for that claim") (citation omitted).

[10] By arguing that "[t]he ultimate issue is whether Houston was properly advised of the mental state required to convict him of the crimes to which he pled guilty[,]" (Obj. at 437), petitioner strays into the underlying merits of his claim

11

Further, the Court notes, although it was not mentioned in the R&R, that petitioner has not raised here any claim that it was ineffective assistance of appellate counsel to *never* raise this issue at any point during his many levels of state court proceedings. Rather, petitioner simply argues the merits of a claim that should have been raised in the first instance during his direct appeal or his attempt to reopen his direct appeal in state court.

In light of the above, the Court overrules petitioner's first objection.

**2.  Objection II – The One-Year Statute of Limitations Began When the Ohio Court of Appeals Dismissed Houston's State Court Appeal on May 6, 2016**

Petitioner's second objection relates to when the one-year limitations period began to run. He relies upon *Johnson v. United States*, 544 U.S. 295, 125 S. Ct. 1571, 161 L. Ed. 2d 542 (2005), in conjunction with *Nolan*, to argue that it was not until May 6, 2016 that he learned the "factual predicate" for his habeas claim. The R&R concluded that both *Nolan* and the state court's decision on May 6, 2016 "'had no direct effect on [the petitioner's] legal status[,]'" (R&R at 421, quoting *Shannon*, 410 F.3d at 1088-89) and, therefore, neither could serve as the "factual predicate" for a habeas claim.

Petitioner objects, stating: "Quite the contrary, the [May 6, 2016] dismissal changed Houston's legal status from a prisoner with potential state court relief to a prisoner who can *only* pursue federal habeas relief." (Obj. at 438 (emphasis in original).) He points to *Johnson*'s statement that, because a petitioner "'[has] to learn of the court's response in the state proceeding,'" that "'can surely qualify as a kind of discovery falling within the statutory language.'" (Obj. at 438, quoting *Johnson*, 544 U.S. at 308 (petitioner's emphases removed).)

---

that he received ineffective assistance of counsel. But before that claim can be addressed, even if it is the "ultimate issue," petitioner first has the burden of showing that his petition is timely.

The Court rejects petitioner's attempt to apply *Johnson* to his situation. In *Johnson*, a federal prisoner had received an enhanced sentence for his federal drug conspiracy conviction based on two prior state court convictions that qualified him as a career offender under the federal sentencing guidelines. When one of those state court convictions was later vacated, Johnson moved under 28 U.S.C. § 2255 to vacate, set aside or correct his federal sentence. The district court found his § 2255 motion to be untimely and the court of appeals affirmed that decision. The Supreme Court held that the vacatur of his state conviction was a "factual predicate" that could restart the one-year clock. *Johnson*, 544 U.S. at 302. But, even so, it affirmed that his § 2255 motion had been untimely because Johnson had not acted with due diligence to attack the state convictions that had been used to enhance his federal sentence, precluding a re-triggering of the limitations period. *Id*. at 310-11. It is apparent that the petitioner in *Johnson* had to wait for a court ruling to find out that the state conviction used to enhance his federal sentence had been vacated and, therefore, he had a new "factual predicate" upon which to proceed to attack his federal sentence, namely, that he had no prior state conviction. Petitioner is not in that position.

Furthermore, "[a] motion to withdraw a guilty plea is not properly filed and will not toll the statute of limitations if the trial court does not have jurisdiction to consider the motion." *Zudell v. Bradshaw*, No. 1:03 CV 1591, 2005 WL 1532595, at *3 (N.D. Ohio June 29, 2005) (citing *Godfrey v. Beightler*, 54 F. App'x 431, 432-33 (6th Cir. 2002)). The Ohio court of appeals considering petitioner's appeal from the denial of his motion to withdraw his guilty plea held that the trial court had no jurisdiction to consider his motion "'subsequent to an appeal and an affirmance by the appellate court.'" (Mot. at 366, quoting *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 378 N.E.2d 162, 165 (1978).) Federal courts defer to state courts' interpretation of state filing requirements. *Israfil*, 276 F.3d at 771.

13

Finally, it is clearly established that "the tolling provision of § 2244(d)(2) does not revive an expired limitations period." *Howard v. Burt*, No. 17-1285, 2017 WL 3425900, at *2 (6th Cir. Aug. 9, 2017) (citation omitted). Therefore, because petitioner's state-court post-conviction motion to withdraw his guilty pleas was filed after the AEDPA limitations period had already expired, even if those proceedings had been "properly filed" (which they were not) they could not serve to toll the statute of limitations and, therefore, waiting for the outcome was an exercise in futility.

In light of the above, the Court overrules petitioner's second objection.

**3.    Objection III – Houston is Entitled to an Equitable Tolling of the Limitations Period on the Basis of an "Actual Innocence" Claim**

Petitioner took the position in opposition to the motion to dismiss that, even if his petition was otherwise time-barred, he is entitled to equitable tolling because of his actual innocence. (Opp'n at 391-95.) He bases this claim primarily on his assertion that he entered his guilty pleas without understanding that "foreseeability" was an insufficient level of intent.

There are occasions when a petitioner's tardy filing may be excused by virtue of equitable tolling. *Holland v. Florida*, 560 U.S. 631, 646, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010). A petitioner may be entitled to equitable tolling "if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace*, 544 U.S. at 418). The burden is on a petitioner to show entitlement to equitable tolling, *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010), and "equitable tolling should be granted sparingly." *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006) (citation omitted).

Here, although petitioner broadly uses the phrase "equitable tolling," his entire argument focuses on a claim of "actual innocence." "[A] demonstration of actual innocence may serve as a gateway for review of an otherwise barred claim." *Bell v. Howes*, No. 14-1169, 2017 WL 2882453, at *2 (6th Cir. June 29, 2017) (citing *McQuiggin v. Perkins*, -- U.S. --, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013)). But such a claim is not a request for equitable tolling; rather, it is a request for an equitable exception to the statute of limitations. *McQuiggin*, 133 S. Ct. at 1931.[11] Therefore, where there is a claim of actual innocence, untimeliness is not "an absolute barrier to relief, but [] a factor in determining whether actual innocence has been reliably shown." *Id.* at 1928. But, as noted by the Court in *McQuiggin*, "tenable actual-innocence gateway pleas are rare[.]" *Id.*

The R&R concluded that petitioner's actual innocence claim must fail because "this is not a case where Petitioner pled guilty to something that was later determined not to be a crime, nor is this a case where Petitioner was unaware of the elements of the crime to which he pled guilty." (R&R at 433.) Petitioner challenges this conclusion, claiming that he "pled guilty on the basis of a legally erroneous understanding of the requisite mental state, which was provided by the actual legal professionals involved in [his] case." (Obj. at 439.) As he did in his opposition to the motion to dismiss, he again cites *Waucaush v. United States*, 380 F.3d 251 (6th Cir. 2004), for the proposition that "where a criminal defendant is provided with a 'legally erroneous' understanding of a required element of a crime, such a misunderstanding 'typifies an unintelligent guilty plea.'" (Obj. at 439.)

---

[11] *See Phillips v. United States*, 734 F.3d 573, 581 n.7 (6th Cir. 2013) (quoting *McQuiggin* and citing *Rivas v. Fischer*, 687 F.3d 514, 547 n.42 (2d Cir. 2012) ("which noted that some courts have framed the actual innocence question as whether the AEDPA allows for 'equitable tolling' but finding it more accurate to describe the issue as whether an 'equitable exception' exists because the due diligence requirement for equitable tolling is 'incompatible with a workable actual innocence exception'")).

But, *Waucaush* is of no help to petitioner. There, after the defendant entered his guilty pleas, Supreme Court opinions further clarified the law, adding restrictions to the scope of the Commerce Clause, with the result that the defendant had actually "plead[ed] guilty to conduct which was not a crime[.]" *Waucaush*, 380 F.3d at 258.[12] In this case, represented by experienced counsel, petitioner entered pleas of guilty to five specific charges in the indictment, charges that properly cited the relevant Ohio statutes, in return for dismissal of thirty-eight (38) other charges. *See, e.g., State ex rel. Tucker v. Matia*, 66 N.E.3d 730, 731 (Ohio 2016) ("the language of Tucker's indictment, to which he pleaded guilty, tracks the language of R.C. 2923.02, which sets out the elements of attempt, and R.C. 2903.02(A), which sets out the elements of the offense of murder") (also rejecting application of *Nolan*).

In order to prevail on his actual innocence claim at this juncture, petitioner must demonstrate that "'it is more likely than not that no reasonable juror would have convicted'" him. *McQuiggin*, 133 S. Ct. at 1933 (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). This requires new evidence that demonstrates "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (citation omitted). Here, at both his change of plea hearing and at his sentencing, petitioner entered guilty pleas based on the indictment, accepted the facts as subsequently recited, and made no protestation of innocence. (*See* Pet. Exs. 2, 3.) His sole basis for relief is a claim that he did not know that the intent element of his crimes had not been met; but, even *if* that were true, it is an argument based only on legal innocence, which courts routinely hold is insufficient to

---

[12] In particular, the defendant was told by the district court that a purely *intrastate* act of violence having only minimal, indirect effects on *interstate* commerce was enough to satisfy the "affect[ed] interstate commerce" element of a RICO charge.

16

establish "actual innocence." *See Harvey v. Jones*, 179 F. App'x 294, 298-99 (6th Cir. 2006) (citing cases); *see also Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992).

Petitioner has presented nothing that would warrant an *exception* to the one-year statute of limitations for bringing this habeas petition.[13] Therefore, his third objection is overruled.

## III. CONCLUSION

For the reasons discussed above, petitioner's objections are overruled and the R&R is accepted. The petition for writ of habeas corpus is denied and this case is dismissed. Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: September 19, 2017

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[13] Petitioner also objects to the R&R's conclusion that he failed to act diligently because, after he claims to have discovered *Nolan*, which he (wrongly) advances as the legal basis for his current claim, he waited six months before filing his motion to withdraw his guilty pleas and then, after receiving the ruling from the Ohio court of appeals, waited another eight months before filing the instant petition. The Court need not address the issue of diligence because that concept is related to equitable *tolling*, not to an equitable *exception* due to actual innocence. *See McQuiggin, supra*. That said, much as in *Johnson*, petitioner "fell far short of reasonable diligence in challenging the state [guilty pleas]." *Johnson*, 544 U.S. at 311.